UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ILMIJE THAQI,                                                           For Online Publication Only

               Plaintiff,


      -against-                                                            **MEMORANDUM AND ORDER**
                                                                                                   09–CV–755 (JMA)


WAL-MART STORES EAST, LP,

               Defendant.
--------------------------------------------------------X
A P P E A R A N C E S:

Peter D. Baron
Baron & Pagliughi, Esqs.
85 Main Street, Suite A
Cold Spring Harbor, NY 11724
    *Attorney for Plaintiff*

Jennifer C. Friedrich
Patricia A. O'Connor
Brody, O'Connor & O'Connor, Esqs.
7 Bayview Avenue
Northport, NY 11768
    *Attorneys for Defendant*


**AZRACK**, **United States Magistrate Judge:**

       On February 24, 2009, plaintiff Ilmije Thaqi ("Thaqi" or "plaintiff") filed suit against defendant Wal-Mart Stores East, LP ("Wal-Mart" or "defendant") for personal injuries she sustained when she slipped and fell in defendant's store. The parties have consented to me for all purposes, including entry of final judgment. (ECF No. 42.) Presently before me is Wal-Mart's motion for summary judgment, which contends that plaintiff has not established that Wal-

1

Mart was negligent. For the reasons discussed below, Wal-Mart's motion for summary judgment is denied.

## I. FACTUAL BACKGROUND

### A. The Incident

On August 6, 2007, at approximately 7:00 p.m., plaintiff walked into a Wal-Mart in Woodbridge, New Jersey with her daughter-in-law, Lyra Thaqi. (Deposition of Lyra Thaqi ("L. Thaqi Dep.") at 21:13–23, 22:5–8, Aff. of Patricia O'Connor in Supp. of Mot. for Summ. J. ("O'Connor Aff.") Ex. E, ECF No. 52.) Within minutes of entering the store, plaintiff slipped and fell on a puddle of clear liquid. (Deposition of Ilmije Thaqi ("I. Thaqi Dep.") at 35:10–15, 41:25–42:8, O'Connor Aff. Ex. D; L. Thaqi Dep. 23:4–6, 35:21–36:5.) Plaintiff did not see the liquid before she fell and maintains that she was not carrying anything in her hands at the time of the fall. (I. Thaqi Dep. 33:16–25, 42:6–8.) After plaintiff fell, a Wal-Mart employee told Lyra Thaqi that the employee felt bad because they had called maintenance, but maintenance had not arrived yet. (L. Thaqi Dep. 44:2–6.) Lyra Thaqi admits that maintenance ended up arriving "30 seconds" or a "minute" after plaintiff fell. (Id. at 44:14–16.)

Various Wal-Mart employees were in the vicinity of the spill, both before and after the accident. They have provided somewhat varying accounts concerning the spill and Wal-Mart's response. Their accounts of these events come from their deposition testimony and from investigative notes compiled by Claims Management, Inc. ("CMI"), a Wal-Mart subsidiary that investigates potential claims against Wal-Mart.[1] (CMI Investigatory Notes ("CMI Notes"), Aff.

---

[1] In 2010 and 2011, plaintiff deposed three of the relevant employees, Isabel Pinho, a supervisor, Caridad L. Colio, a customer service employee, and Kimone Vassell, a co-manager. After those depositions, the Court compelled Wal-Mart to produce some of CMI's investigative notes. (Feb. 26. 2014 Order.) After receiving the notes, plaintiff did not seek to re-open the depositions of the above employees, nor did plaintiff seek to depose Maria Rivera, another employee who spoke to CMI.

2

of Peter Baron in Opp. to Mot. Summ. J. ("Baron Aff."), ECF No. 55; Def.'s Feb. 14, 2013 Ltr., ECF No. 61; see also Deposition of Caridad L. Colio ("Colio Dep.") at 90:18–25, O'Connor Aff. Ex. F (employee witness who testified that the "[h]ome office" called to speak with her about the accident).) CMI spoke to the relevant employees in August 2008 and summarized these conversations in CMI's investigative notes. (CMI Notes.)

### 1. Isabel Pinho

Shortly before plaintiff fell, Isabel Pinho ("Pinho"), a front-end supervisor for Wal-Mart, was serving as a door greeter. (Deposition of Isabel Pinho ("Pinho Dep.") at 9:16–22; 16:8–10.) An unidentified Wal-Mart employee from the pet department tapped Pinho on the shoulder and pointed out a spill to her. (Id. at 21:13–24:7.) The unidentified employee had come from the direction of the spill. (Id. at 94:10–12.) Pinho could see the spill, which was located near the Family Fun Center and the Subway restaurant, both of which were close to the store's entrance. (Id. at 24:23–25, 70:9–13.) The spill was about a "car-and-a-half length away" from Pinho. (Id. at 24:16–22.) Pinho saw a large 64-ounce soda cup on the floor and a puddle of liquid about eleven by seventeen inches in circumference. (Id. at 25:6–29:5.) Pinho did not know how long the liquid had been on the floor before the employee from the pet department notified her. (Id. at 25:8–9, 26:21–25, 28:4–5.)

After seeing the spill, Pinho yelled to Mayra Ramos ("Ramos"), a Wal-Mart employee located in the nearby customer service department, to call maintenance to clean up the spilled liquid. (Id. at 33:25–37:19.) Pinho saw Ramos get on her walkie-talkie.[2] (Id. at 98:7.)

---

[2] Pinho did not hear Ramos' conversation and did not know whether Ramos contacted maintenance directly over the walkie-talkie or whether Ramos contacted the phone dispatcher, who would then announce it over the loudspeaker. (Pinho Dep. 97:10–99:1.) In any event, Lyra Thaqi admits that maintenance arrived a minute or less after the accident.

After speaking to Ramos, Pinho turned around to walk over to the spill; when she did, she saw plaintiff already on the floor. (Id. at 39:9–41:8.) According to Pinho, it was "a matter of seconds" between her request to Ramos and plaintiff's fall.[3] (Id. at 40:1–7, 71:24–6.)

Pinho did not ask the pet department employee, who initially notified her of the spill, to stay in the area until the spill was cleaned up—her "main concern was to get somebody to get over there, and [she] just didn't think about that." (Id. at 44:3–5.)

### 2. Caridad Colio

Caridad Colio ("Colio"), another employee, maintains that she witnessed plaintiff's fall. (See generally Colio Dep.) Colio worked in the customer service department and as a cashier. (Id. at 27:19–21, 54:12–24.) During the incident, Colio was working in the customer service department. (Id. at 54:23–24.)

Colio saw plaintiff fill a lidless paper cup with soda from the Subway soda fountain. (Id. at 58:9–61:10, 63:18–21.) Seconds later, Colio saw plaintiff spill soda and slip on the liquid.[4] (Id. at 58:9–64:25.) Colio paged the assistant manager and maintenance over the loudspeaker to notify them of the incident. (Id. at 75:12–20, 77:16–19.)

In addition to witnessing plaintiff's fall, Colio also maintains that, less than two minutes before plaintiff's fall, Colio had walked past the accident site and did not see liquid on the floor. (Id. at 101:20–103:17.)

---

[3] Specifically, Pinho recounted that, "[b]y the time [she] turned around, after [she] told [Ramos], [plaintiff] was already on the ground." (Pinho Dep. at 40:1–7.)

[4] During her deposition, Colio indicated that "[b]efore [plaintiff] spilled the soda in [sic] the floor, she [was] looking around with that cup in her hand," (Colio Dep. 64:22–25), and "[a]s soon as she saw the person she was looking for, she quickly spun herself around, spilling the soda on the floor and falling down," (id. at 62:6–9 (adopting attorney's narrative of the events).)

4

### 3. Maria Rivera

The CMI Notes include statements from Maria Rivera ("Rivera"), a Wal-Mart maintenance employee, who maintains that she was called to clean up the liquid and witnessed plaintiff's fall.[5] (CMI Notes at 9.) According to Rivera's statements included in the CMI Notes, there were two different liquid spills three feet apart from one another. (Id.) Rivera recollected that "[t]here were 2 different spots of liquid, [and that she] was cleaning 1 when [plaintiff] fell in [the] second [spot]." (Id.) The CMI Notes also indicate Rivera "was getting ready to put cones out, when [plaintiff] walked thru the spill" and that an unidentified associate was "guarding the site." (Id.)

### 4. Unidentified Associate

The CMI Notes also include the following statement from Kimone Vassell, a co-manager, who relayed the following account from an unidentified associate to CMI: "assoc[iate] saw a child come out of game room, and throw a cup into the garbage, looked like liquid spilled on child, did not think to go look if any on floor, 1 min. later heard [plaintiff] yell, and went over to assist [plaintiff]." (Id. at 13.)

## B. Wal-Mart's Response to the Accident

After plaintiff's fall, Pinho called co-manager Kimone Vassell ("Vassell"), who came to the scene and later filled out a Wal-Mart incident form. (Pinho Dep. at 47:11–19; Deposition of Kimone Vassell ("Vassell Dep.") at 43:16–45:21, O'Connor Aff. Ex. G; Incident Form, O'Connor Aff. Ex. N.)

Pursuant to Wal-Mart's standard protocol, Vassell was supposed to inform the store's loss prevention personnel about the accident, who were then supposed to review video from the

---

[5] Rivera's statements to CMI were translated through "Joanna", another Wal-Mart employee, and then included in CMI's notes. (CMI Notes at 9.)

video cameras, report what they saw to a manager, and forward any relevant video to CMI. (Vassell Dep. at 26:13–28:6, 57:15–59:3.) Vassell, however, could not recall contacting loss prevention concerning plaintiff's accident, and Wal-Mart has not produced any video in in the instant litigation. (Id. at 56:19–57:13.) Similarly, pursuant to Wal-Mart's standard protocol, Vassell was supposed to photograph the accident scene even if maintenance had already cleaned the spill at issue. (Id. at 22:22–23:9, 52:4–7, 56:2–7, 70:10–13.) Vassell, however, did not recall taking any photographs in this case, and none have been produced. (Id. at 56:2–14; 70:14–18; Incident Form.) With respect to video and photographs, the CMI Notes contain the following: (1) the notation "[Vassell] . . . said that there is no pics, as spill already cleaned up, and that the VCR Tape was not changed out that day, so there is no video for the entire day," (CMI Notes at 10); and (2) CMI's summary of an August 22, 2007 conversation with Colio that states, "Yes to video, Yes to pics. taken[,]" (id. at 11). Seizing on the latter statement, plaintiff contends that Wal-Mart engaged in spoliation—a claim that is discussed infra.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment should be granted if, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in her favor, there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c): see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–50 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the burden of demonstrating the absence of a

6

genuine issue of material fact. Id. at 322–23 (1986); CILP Assoc., L.P. v. PriceWaterhouse Coopers, LLP, 735 F.3d 114, 123 (2d Cir. 2013).

For summary judgment, however, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 247–48 (emphasis in original). After the moving party demonstrates an absence of genuine issues of material fact, the non-moving party must produce evidence raising a material question of fact to defeat the motion. See Fed. R. Civ. P. 56(e); see also Miner v. Clinton County, N.Y., 541 F. 3d 464, 471 (2d Cir. 2008). In considering the motion, the court must consider the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in the non-moving party's favor, and "eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996)).

**B. Negligence Standards**

**1. Slip-and-Fall Liability under New York Law**

To establish a prima facie case of negligence under New York law,[6] the plaintiff must establish: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." Solomon v. City of New York, 66 N.Y.2d 1026, 1027 (1985); see also Khalil-Mirhom v. Kmart Corp., No. 12–CV–5512, 2014 WL 173415, at *4 (E.D.N.Y. Jan. 13, 2014). "Negligence is conduct that falls beneath the standard of care which would be

---

[6] Although plaintiff's accident occurred in New Jersey, both parties assume that New York law applies to this dispute. Accordingly, the Court will apply New York law. See, e.g., Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 124 n. 4 (2d Cir. 2005) (assuming that New York law applies because the parties cited only New York law); Lehman v. Dow Jones & Co., 783 F.2d 285, 294 (2d Cir. 1986) (holding that a court is not obligated to undertake an investigation of potential differences between New York and California law and may instead apply New York law when it is the sole law cited by the parties).

7

exercised by a reasonably prudent person in similar circumstances at the time of the conduct at issue." Harper v. United States, 949 F. Supp. 130, 132 (E.D.N.Y. 1996).

Wal-Mart clearly owed plaintiff a duty to "maintain [its] premises in a reasonably safe condition." Basso v. Miller, 40 N.Y.2d 233, 241 (1976). And, it is undisputed that there was liquid on the floor and that, following plaintiff's fall, her clothes were wet. Although this is sufficient to establish that a hazard existed, plaintiff must still establish that defendant was negligent. See Simoes v. Target Corp., No. 11–CV–2032, 2013 WL 2948083, at *8 (E.D.N.Y. Jun. 14, 2013) ("The mere existence of a foreign substance, without more, is insufficient to support a claim of negligence." (quoting Segretti v. Shorenstein Co., East LP, 682 N.Y.S.2d 176, 178 (App. Div. 1st Dep't 1998)).

"To impose liability upon a defendant in a slip-and-fall action, there must be evidence that the defendant either created the condition which caused the accident, or had actual or constructive notice of the condition." Cusack v. Peter Luger, Inc., 909 N.Y.S.2d 532, 533 (App. Div. 2d Dep't 2010); see also Cassierra v. Target Corp., No. 09–CV–1301, 2010 WL 2793778, at *2 (E.D.N.Y. Jul. 12, 2010).

Here, plaintiff introduced no facts raising an inference that a Wal-Mart employee caused the liquid to be on the floor. Cf. Cooper v. Pathmark Stores, Inc., 998 F. Supp. 218, 220 (E.D.N.Y. 1998) (explaining that a spill from defendant's merchandise "is not attributable to the defendant absent either spillage by the defendant or its employees or conduct on the defendant's part which demonstrably increases the risk of creating the condition"). Plaintiff, therefore, has not established that Wal-Mart created the hazardous condition that allegedly caused her injury.

Plaintiff, however, may still establish negligence if she can demonstrate that defendant had actual or constructive knowledge of the condition that caused the accident.

8

**2. Actual Notice**

To constitute actual notice, a plaintiff must prove that the defendant received a report of or was otherwise aware of the dangerous condition. Quarles v. Columbia Sussex Corp., 997 F. Supp. 327, 332 (E.D.N.Y. 1998). Even if a plaintiff demonstrates that the defendant had actual notice of the condition, the defendant is entitled to a reasonable opportunity to correct the hazardous condition. See Gonzalez v. K-Mart Corp., 585 F. Supp. 2d 501 (S.D.N.Y. 2008); Aquino v. Kuczinski, Vila & Assocs., P.C., 835 N.Y.S.2d 16, 19 (App. Div. 1st Dep't 2007) (noting that "notice alone is not enough; the plaintiff must also show that defendant had a 'sufficient opportunity, within the exercise of reasonable care, to remedy the situation' after receiving such notice" (quoting Lewis v. Metropolitan Transp. Autho., 472 N.Y.S.2d 368 (App. Div. 2d Dep't 1984))).

In Gonzalez v. K-Mart Corp., K-Mart had actual notice where an employee "noticed a jar of hair gel with a loose top and a puddle of hair gel on the floor." 585 F. Supp. 2d at 502. The employee moved the bottle, "went to retrieve a hazard sign, which he could not locate," and then sought cleaning materials. Id. The employee left the spill unattended for two to three minutes while he went to locate the hazard sign and cleaning supplies; during that time, the plaintiff slipped on the hair gel. Id. The court held that that although the store "was aware of the dangerous condition" prior to the plaintiff's accident, the two to three minutes at issue was "a brief period of time insufficient to give the [d]efendant a reasonable opportunity to address the situation." Id. at 505.

Gonzalez and other cases establish that, depending on the circumstances, summary judgment may be appropriate on the issues of whether the defendant had a reasonable opportunity to correct the hazard and whether the defendant's response to the hazard was

reasonable. See id.; Alami v. 215 East 68th Street, L.P., 931 N.Y.S.2d 647, 649–650 (App. Div. 2d Dep't 2011) (granting summary judgment where, five minutes before plaintiff's accident, elevator operator was informed of spill in laundry room located in basement of apartment building); Calick v. Double A Property Assocs., 674 N.Y.S.2d 694, 696 (App. Div. 2d Dep't 1998) (granting summary judgment where building manager's agent noticed spill in elevator, ran to get a mop and returned within one minute); Melton v. Sears, Roebuck and Co., 550 N.Y.S.2d 222 (App. Div. 3d Dep't 1990) (granting summary judgment where department store employee observed child vomit, "immediately called another employee to summon maintenance," "as he turned from making this call, . . . he saw plaintiff lying on the floor," and "[t]he entire event took a matter of seconds"); but see (report and recommendation) (denying summary judgment where employee placed caution sign over spill within one minute of actual notice and returned less than five minutes later with mop and bucket, reasoning that "[i]n a case of actual notice, elapsed time is only one element in determining whether a defendant acted reasonably" and that "a jury could find that [the caution sign] was not adequate warning or that cleaning should have been more expeditious") adopted by 2010 WL 1191451 (S.D.N.Y. Mar. 26, 2010).

### 3. Constructive Notice

To establish that a defendant had constructive notice of a dangerous condition, "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." Casiano v. Target Stores, No. 06–CV–6286, 2009 WL 3246836, at *3 (E.D.N.Y. Sept. 24, 2009) (quoting Gordon v. Am. Museum of Natural History, 67 N.Y.2d 836, 837 (1986) (internal citations omitted); see also Negri v. Stop & Shop, 65 N.Y.2d 625, 626 (1985) (denying summary judgment where baby food on floor was dirty and messy, witness did not hear any jars breaking for 15 minutes before the accident, and

the aisle had not been cleaned or inspected for at least 50 minutes prior to the accident); Nadal v. BJ's Wholsale Club, Inc., No. 10–CV–2931, 2012 WL 4328377, at *3 (E.D.N.Y. Sept. 19, 2012) (citing Negri and denying summary judgment where, inter alia, banana on floor was smashed and dirty).

**C. Analysis**

Plaintiff contends that the various accounts of Wal-Mart's employees from the deposition testimony and CMI Notes raise factual questions concerning Wal-Mart's response after it received actual notice of the spill. According to plaintiff, the actions of the employees were unreasonable and violated Wal-Mart's internal procedures for addressing spills. Plaintiff argues, inter alia, that: (1) Pinho or the pet department employee should have immediately guarded the spill site or set up warning cones; (2) the pet department employee should have been carrying a pocket pad or paper towel on his person and should have attempted to immediately clean up the spill; and (3) Rivera, the maintenance employee, should have put out cones and warning signs while cleaning up the spill.

Ultimately, it is unnecessary to determine whether the employees' accounts concerning Wal-Mart's actual notice of the spill (and subsequent response) preclude summary judgment. First, in addition to relying on the accounts of Wal-Mart's employees, plaintiff also contends that Wal-Mart engaged in spoliation by failing to preserve video and photographs of the spill and accident. Factual questions exist concerning the video. Accordingly, for purposes of summary judgment, plaintiff is entitled to an adverse inference concerning the allegedly missing video. That adverse inference is sufficient to defeat summary judgment. Second, even without that adverse inference, the account of an unidentified associate set out in the CMI Notes raises factual questions concerning Wal-Mart's constructive notice of the spill. Before discussing these two

11

issues, I will first address the preliminary question of whether the CMI Notes should be excluded as hearsay.

### 1. Admissibility of the CMI Notes

Defendant's conclusory hearsay challenge to the CMI Notes is insufficient to preclude the admission of the CMI Notes at this time. Although it was almost certain that plaintiff would rely on the CMI Notes in opposing summary judgment, defendant chose not to address the admissibility of the notes in its opening brief. In fact, defendant's reply brief does not even mention this issue. Instead, without citation to any authority, defendant asserts, in one paragraph of its reply 56.1 statement, that the CMI Notes are hearsay. I decline to exclude the CMI Notes at this time based on this conclusory and belated argument.

Moreover, the CMI Notes are likely admissible as admissions under Federal Rule of Evidence 801(d)(2)(D). See Calderera v. Chandris, S.A., 91–CV–8181, 1993 WL 362406, at *1 (S.D.N.Y. Sept. 13, 1993) (observing, where neither party contested admissibility, that accident report prepared by employee was "a statement by defendant's agent concerning a matter within the scope of his agency" and, thus, "an admission by defendants and . . . not hearsay."); Mister v. Ne. Illinois Commuter R.R. Corp., 571 F.3d 696, 698–99 (7th Cir. 2009) (concluding that informal accident report prepared by defendant's safety officer was an admission under Rule 801(d)(2)(D), but ultimately affirming exclusion of report under Rule 403 as more prejudicial than probative); cf. Simons v. Marriott Corp., 92–CV–3762, 1993 WL 410457, at *4–5 (S.D.N.Y. Oct. 13, 1993) (finding letter from independent claims investigator hired by insurance company was not an admission by insured because adjuster was not an agent of the insured).[7]

---

[7] In contrast to the independent claims investigator in Simons, CMI is a subsidiary of defendant Wal-Mart and likely qualifies as Wal-Mart's agent. (Def.'s Feb. 14, 2013 Ltr.; Colio Dep. at 90:18–25 (stating that "[h]ome office" called to speak with her about the accident).)

The CMI Notes may also be admissible as business records under Rule 803(6). Compare Puggioni v. Luckenbach S. S. Co., 286 F.2d 340, 344 (2d Cir. 1961) ("Although accident reports should not be admitted when the party making the report offers it for the purpose of its own exoneration from liability . . . trial judges [have] discretion to determine whether the circumstances surrounding accident reports made by others justify their acceptance in evidence." (internal citations omitted)); Roth v. Godiva Chocolatier, Inc., 06–CV–3564, 2008 WL 95600, at *7 & n. 6–7 (N.D. Ill. Jan. 7, 2008) (finding call log of worker's compensation claims adjuster admissible as a business record and explaining that: (i) the claims adjuster's "job is to gather information about . . . claims"; (ii) the "form and appearance of the call log indicate that the practice was standardized and routine"; and (iii) the call log did not have to be authenticated at summary judgment phase because "the identity of the author is not in doubt, . . . there is no evidence or suggestion that the call log was fabricated or unreliable [and] . . . [if necessary,] counsel could authenticate the document at trial using the custodian's testimony, or through a written certification") with Scheerer v. Hardee's Food Sys., Inc., 92 F.3d 702, 707 (8th Cir. 1996) (holding that district court erred in admitting incident report that defendant prepared and that defendant introduced into evidence).

To the extent that any additional hearsay analysis is required for the employees' statements contained in the CMI Notes, those statements are also likely admissible as admissions. See Pappas v. Middle Earth Condo. Ass'n, 963 F.2d 534, 537 (2d Cir. 1992); Smith v. Pathmark Stores, Inc., 485 F. Supp. 2d 235, 236 (E.D.N.Y. 2007). Accordingly, I will consider the CMI Notes.

## 2. Spoliation

Claims of evidence spoliation can arise in two circumstances. First, a party may seek a sanction for alleged spoliation. Mali v. Fed. Ins. Co., 720 F.3d 387, 392–93 (2d Cir. 2013). If the moving party prevails, the court may award various types of adverse inference instructions or other relief. Id. In order to prove that an opposing party engaged in sanctionable spoliation, the moving party must establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 107–12 (2d Cir. 2001)). "[D]iscovery sanctions, including an adverse inference instruction, may be imposed where a party has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence." Id. at 101. Before imposing a sanction under this framework, the district court must "make findings that justif[y] the sanction." Mali, 720 F.3d at 392–93.

Second, even if an aggrieved party does not seek sanctions for spoliation, the party may still be entitled to an adverse inference on summary judgment (or a permissible adverse inference instruction at trial) if the record warrants such an inference. See id. at 393. Under this approach, the court is not required to make any factual findings, which are all left to the jury. Id. The record can warrant an adverse inference concerning spoliation where the moving party establishes that: (1) the evidence at issue existed; (2) the evidence was in the exclusive possession of the non-moving party; and (3) "the non-production of the [evidence] has not been satisfactorily explained." Id. at 391–93 (approving district court's adverse inference instruction).

14

The Court will analyze plaintiff's spoliation claim under this framework. As explained below, for purposes of summary judgment, plaintiff is entitled to an adverse inference concerning the allegedly missing video.[8]

In support of its spoliation claim, plaintiff relies heavily on CMI's investigatory notes from an August 22, 2007 interview with Colio, which state "Yes to video, Yes to pics. taken." The probative value of this statement is far from overwhelming—the record does not indicate the questions to which Colio responded "Yes" and it is not clear how Colio, who worked in the customer service department, would have known that a video existed of the incident. Colio's statement, however, is not the only evidence of spoliation.

The CMI Notes indicate that Vassell told CMI "that . . . the VCR Tape was not changed out that day, so there is no video for the entire day." (CMI Notes at 10.) At her deposition, Vassell explained that there was a video for each day of the month, numbered 1 through 31. (Vassell Dep. 60:4–8.) Each video would be kept for one month and would then be recorded over on the same date the following month. (Id.)

On its face, Vassell's statement to CMI indicates that Wal-Mart did not engage in spoliation because Vassell claims that a video of the incident never existed. Defense counsel, however, admits that Vassell's explanation does not make sense. In defendant's reply papers, defense counsel asserts that Vassell's statement that the VCR tape was not changed out "is *unexplainable* as any Wal-Mart stores not already converted to a DVR system in 2007 were still on a month to month VCR system that did not require any changing of tapes on a daily basis . . . . [because] [t]he tapes merely recycled after a 30 or 31 day time period." (Def. Reply 56.1 ¶ 8 n. 2 (emphasis added).) Although defense counsel provides no evidence in support of this assertion,

---

[8] Because plaintiff is entitled to an adverse inference concerning the video, it is unnecessary to reach plaintiff's argument that an adverse inference is also appropriate regarding the allegedly missing photographs.

this concession can be held against defendants. Defense counsel's characterization of Vassell's statement as "unexplainable" establishes that Wal-Mart's failure to produce to the video "has not been satisfactorily explained." Mali, 720 F.3d at 391. Defense counsel's concession concerning Vassell is, along with Colio's statement to CMI, sufficient to warrant an adverse inference concerning the video, and that inference is sufficient to preclude summary judgment.

In opposing plaintiff's spoliation claim, Wal-Mart raises two arguments. First, Wal-Mart cites to the affidavit of Andrea Russo, the Asset Protection Coordinator, for the Woodbridge, New Jersey store. Russo attests that although there were video cameras in 2007 in the general area of plaintiff's accident, the cameras did not cover the specific location where the plaintiff claims the accident occurred. (Aff. of Andrea Russo ("Russo Aff.") ¶ 4, Baron Aff. Ex. D.) If this were the only evidence in the record concerning the coverage of the video cameras, Wal-Mart might be entitled to summary judgment.[9] However, there is contrary evidence concerning the coverage of the cameras. Vassell, who was the co-manager of the store in 2007, testified that, to the best of her knowledge, a video camera usually faced the entrance of the store and that the scene of the accident would have been in view of the fixed camera. (Vassell Dep. at 33:3–14.) And, when pressed by Wal-Mart's counsel, Vassell confirmed that the area at issue was "usually . . . covered by a camera." (Id. at 77:2–9.) Additionally, Vassell's testimony suggests that she had personal knowledge of where the cameras faced. (See Vassell Dep. at 77:13–21 ("[I]f I walked in to . . . the loss prevention department and . . . [the] VHS had stopped for that area . . . I would make sure that a tape got into that particular camera.").) Because factual issues

---

[9] Russo's affidavit, which was prepared in July 2011 raises some questions. When Russo prepared the affidavit, she was "currently employed" as the Asset Protection Coordinator for the Woodbridge store. (Russo Aff. ¶ 2.) Her affidavit, however, does not indicate when she assumed this position or the basis of her purported knowledge of the camera positions in 2007. Those questions notwithstanding, plaintiff did not depose Russo to inquire into these issues.

16

exist concerning the coverage of the video camera, Russo's affidavit does not compel summary judgment on the issue of spoliation.[10]

Second, Walmart argues that plaintiff has not established that the video would have been relevant to plaintiff's suit, citing to Simoes v. Target Corp., No. 11–CV–2032, 2013 WL 2948083 (E.D.N.Y. Jun. 14, 2013). In Simoes, the court rejected the plaintiff's request for a spoliation sanction where Target preserved only the one-minute portion of a surveillance video that showed the plaintiff's fall. The court concluded that Target was merely negligent in failing to institute a litigation hold and allowing the earlier portions of the video to be destroyed pursuant to Target's normal video retention policies. Id. at *4–6. The court also concluded that the plaintiff failed to meet the relevance element of her spoliation claim. Id. at *6–7 (citing Residential Funding Corp. 306 F.3d at 108). The court observed that the liquid that caused plaintiff's fall was not even visible on the video. Id. at *7. The court also explained that, even assuming that the video would have established how and when the spill occurred, "such additional footage could have been favorable to either party's case" and it was just as likely that it would have been favorable to Target. Id.

Simoes is distinguishable from the instant case. Because the court found that Target's destruction of the video was merely negligent, the plaintiff faced a higher hurdle in meeting the relevance element of its claim. By contrast, here, Walmart's concession that Vassell's testimony

---

[10] In defendants' papers, defense counsel asserts, without citation to any evidence, that:

> information regarding whether cameras are active or dummies and what areas of the store are covered by active cameras is closely guarded and not made available to employees or even managers of the store. It is the Asset Protection Department alone that knows which cameras are active and what particular views of the store are captured by what specific camera.

(Def. Reply 56.1 ¶ 8.) Defense counsel's unsupported assertion on this point is not admissible evidence, and even if it were, it conflicts with Vassell's testimony.

concerning the video is "unexplainable" would allow the jury to infer that the video would have been unfavorable to Walmart. Mali, 720 F.3d at 391–93; cf. Residential Funding Corp., 306 F.3d 99 at 109 ("[W]here a party seeking an adverse inference adduces evidence that its opponent destroyed potential evidence (or otherwise rendered it unavailable) in bad faith or through gross negligence (satisfying the 'culpable state of mind' factor), that same evidence of the opponent's state of mind will frequently also be sufficient to permit a jury to conclude that the missing evidence is favorable to the party (satisfying the 'relevance' factor).").

Because the record would allow a jury to draw an adverse inference against Wal-Mart concerning spoliation, Wal-Mart's summary judgment motion must be denied.

### b. Constructive Notice

Even if an adverse inference were not appropriate and Wal-Mart could establish that it acted reasonably when it received actual notice of the spill through the pet department employee, there are factual questions as to whether Wal-Mart had constructive notice of the spill before the pet department employee saw it.

The CMI Notes state that: "assoc[iate] saw a child come out of game room, and throw a cup into the garbage, looked like liquid spilled on child, did not think to go look if any on floor, 1 min. later heard [plaintiff] yell, and went over to assist [plaintiff]." (CMI Notes at 13.) In light of this associate's observations, factual issues exist as to whether the associate should have immediately investigated the potential spill and whether that spill caused plaintiff's fall.

Wal-Mart argues that because plaintiff fell only fell one minute after the unidentified associate saw the incident above, Wal-Mart had an insufficient amount of time to discover and remedy the spill. This, however, is a factual question. If the unidentified associate had simply responded in the same manner as Pinho, the accident might have been averted. First, after

learning of the spill, Pinho immediately asked Ramos to call for maintenance, which, according to Lyra Thaqi, arrived at the accident scene only 30 seconds or a minute after plaintiff fell. A jury could conclude that if the unidentified associate had promptly investigated the potential spill and called for maintenance, maintenance would have arrived before plaintiff's fall. Second, even if maintenance would not have made it to the spill in time, the unidentified associate may have had sufficient time to walk over to the spill and guard it until maintenance arrived. Notably, Pinho indicated that she was about to walk over to the spill when plaintiff fell. If the unidentified associate had done the same, the associate may have arrived at the spill before plaintiff and prevented her fall. These are questions for the jury to determine.

### III. CONCLUSION

For the reasons stated above, Wal-Mart's motion for summary judgment is denied.

SO ORDERED.

Dated: March 31, 2014
Brooklyn, New York

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE